IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM NO.: 97-71 (PG) |
| V. | |
| JOSE L. DIAZ FONTANEZ<br>Defendant | |

**OBJECTIONS TO THE AMENDED PRESENTENCE INVESTIGATION REPORT FURNISHED ON OR ABOUT JUNE 18TH, 2002 TO DEFENDANT**

**TO THE HONORABLE COURT:**

COMES NOW DEFENDANT, by and through the undersigned counsel, and most respectfully prays and states as follows:

**OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

In the absence of a recently updated presentence report, we submit these objections, specifically to paragraphs 24, 25, 27 and 30.

**THE ADVISORY NATURE OF THE GUIDELINES AT SENTENCING**

In **United States v. Booker**, 125 S.Ct. 738, 2005 WL 50108 (Jan. 12, 2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory. The other factors set forth in 18 U.S.C. § 3555 (a) must also be considered in fashioning the appropriate sentence. See **United States v. Ameline**, ___ F.3d ____, 2005 WL _____, U.S. App. LEXIS 2032 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only *one* of many factors that a sentencing judge must consider in determining an appropriate individualized sentence").

These factors that must also be considered at sentencing include:

    a)    the nature and circumstances of the offense,

1

    b)    the history and characteristics of the defendant,

    c)    the need for the sentence imposed to reflect the seriousness of the offense,

    d)    to promote respect for law and to provide *just* punishment for the offense,

    e)    to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant;

    f)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,

    g)    the need to avoid unwarranted sentencing disparities, and to provide restitution to the victims.

**Booker** at 19.

        Consider also that Congress had directed that the district court "shall impose a sentence sufficient, *but not greater than necessary*, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a). This is the "primary directive" of the sentencing statute. **Ranum**, supra. Remember also that The Supreme Court said in **Koon v. U.S.**, 518 U.S. 81, 113 (1996), that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

        Even before **Booker,** the Sentencing Guidelines "place[d] essentially no limit on the number of potential factors that may warrant a departure." **Koon** 518 U.S. at 106;

**U.S. v. Coleman**, 188 F.3d 354, 358 (6th Cir.1999) (en banc) (there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. §3661 ("no limitation shall be placed on the information" a court can receive and consider for purposes of imposing an appropriate sentence). A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the guidelines." Even when the guidelines were mandatory, they did not "displace the traditional role of the district court in bringing compassion and common sense to the sentencing process….In areas where the Sentencing Commission has not spoken . . . district courts should not hesitate to use their discretion in devising sentences that provide individualized justice." **U.S. v. Williams,** 65 F.3d 301, 309-310 (2d Cir. 1995); "It is important, too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." **U.S. v. Gaskill**, 991 F.2d 82, 86 (3rd Cir. 1993). "The Guidelines are not a straightjacket for district judges." **U.S. v. Cook**, 938 F.2d 149, 152 (9th Cir. 1991). **The Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom.**" **U.S. v. Dominguez**, 296 F.3d 192, 196 n. 7 (3rd Cir. 2002) (Emphasis added) quoting **U.S. v. Johnson**, 964 F.2d 124, 125 (2d Cir.1992)); ." **U.S. v. Blarek II**, 7 F.Supp. 2d 192, 211 (EDNY 1998) ("To impose the harsh sentence suggested by Probation and the government under the Guidelines without appropriate downward departures would amount to an act of needless cruelty given the nature of the crimes committed and the personal circumstances of these defendants").

Finally, remember that "[i]f the 600-plus pages of the most recent set of sentencing guidelines have taught us anything, it is that punishment cannot be reduced to an algorithm." **U.S. v. Myers**, 2005 WL 165314, (S.D.Iowa Jan. 26, 2005).

## DISCUSSION OF OBJECTIONS

**Paragraph 24**

Defendant's conviction under the Commonwealth of Puerto Rico's escape statute was set aside, as a result of the Commonwealth of Puerto Rico Supreme Court's decision that to evade a residential treatment facility does not constitute a violation of Article 232 of the Penal Code. See **People of Puerto Rico v. Victor González Vega**, 147 DPR 692 (1999) and **People of Puerto Rico v. Báez Ramos**, 149 D.P.R. 469 (1999). The United States Sentencing Guidelines identifies invalidated convictions as ones that cannot be counted in order to assess criminal history computations. **U.S.S.G. §4A1.2 Application Note 6.**

Accordingly, the notice of conviction and three points added to the criminal history score should be eliminated. A certified copy of the Judgment will be presented at Sentencing as it was retrieved today from the State's Clerk's Office.

**Paragraph 25**

Defendant's conviction under the Commonwealth of Puerto Rico's Firearms Statute should not have any criminal history points assessed against his score, since the conduct complained of constituted part and parcel of the same conduct complained of in the indictment. While the indictment places a date of "on or about March 7, 1994", this should not be a bar to include the referred conduct, since on August 10, 2001, by facsimile communication, the United States announced its intention to use as evidence

4

the firearms offenses committed in furtherance of the conspiracy in this case. Defendant was arrested in February 1995 carrying a weapon he was not authorized to carry under the law. Defendant's use of firearms facilitated the objects of the conspiracy in this case.

The 1992 Guideline Manual sets forth that relevant conduct is that which occurs during attempts to avoid detection or responsibility for the offense and which is part of the common scheme or plan. It is the government's theory that defendant used weapons to further the objects of the conspiracy. As part of the evidence intended to be used by the government, defendant's convictions were provided in discovery and held out as to be used at trial. Without a doubt, defendant's escape in 1995 from his state conviction held out as an overt act is an attempt to avoid responsibility for the offense and the use of the weapon is a clear attempt to avoid detection. In fact, part of the evidence announced to be used at trial were letters sent between defendants after they were already arrested in this case and housed at MDC, used to prove that still, upon apprehension by federal authorities, they conspired together.

For this reason, the 1995 firearm conviction should not be counted criminal history points.

**Paragraph 27**

The criminal history category should be "0", for the above stated reasons.

**Paragraph 30**

The recommended guideline imprisonment range should be at level 39, criminal history one. There is a stipulation by the parties of no less than 292 months of imprisonment.[1]

---

[1] Caveat provided as to the credit for time spent in state prison on the same set of facts and which is part of an undischarged prison term. §5G1.3(b). The undischarged term is also to be served concurrently pursuant to the plea agreement and §5G1.3.

**Page 8 Part C**

Defendant is still serving an undischarged term of imprisonment, resulting from the conviction in local court of the murder, conspiracy and firearms offenses described in paragraph 26. Pursuant to the Court of Appeal's decision in the case of **United States v. Carlos Ramírez,** No. 00-2274, Slip Op. ___Fed. 3d ___ (June 12th, 2001), and the provisions of **U.S.S.G §5G1.3(b)**, defendant should be given credit for defendant's prior state prison term arising from the same set of facts accounted as part of the federal offense in paragraph 26 of the PSI. See also **United States v. Austin,** 239 F.3d 1, 5 (1st Cir. 2001). The trigger date for whether the state sentence is "undischarged" is the date of the federal sentencing, not the date of arrest on federal charges. See, e.g., **Labeille-Soto,** 163 F.3d 93, 99 (2d Cir. 1998).

## CONCLUSION

In imposing sentences in criminal cases, the court is required by the governing statute – the Sentencing Reform Act – to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the Act]." 18 U.S.C. § 3553(b)(1). The purposes of sentencing set forth in the Sentencing Reform Act are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide *just punishment* for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training,

6

medical care, or other correctional treatment in the most effective manner.

To give some real content to the Sentencing Reform Act's directives, Congress established an expert body – the United States Sentencing Commission – to promulgate sentencing Guidelines for criminal offenses. **Mistretta v. United States,** 448 U.S. 361, 379 (1989) (noting Commission's status as "an expert body"). The Sentencing Commission, after extensive review of sentencing practices across the country established a comprehensive set of sentencing guidelines. The Commission has carefully calibrated the Guidelines through annual amendments, and Congress has had the opportunity to reject and amend Guidelines that were not to its satisfaction. The Guidelines provide clear guidance on what is just punishment for federal offenses. To be sure, the constitutionality of the fact-finding apparatus attached to the Guidelines is currently addressed by recent Supreme Court review, and said court has held that in cases such as this one the Guidelines are advisory only.

Congress has directed that courts must follow the Guidelines in imposing sentence unless some unusual factor justifies a departure. As a result, Congress has in essence instructed the courts that the Guidelines provide "just punishment" for criminal offenses.

Just punishment, as applied to this defendant, who became an adult for purposes of the charges set forth in the indictment just a few months prior to the last overt act of murder, is the one obtained through the application of the offense level stipulated by the parties and criminal history category of One, provided that credit is given for his undischarged state term of imprisonment on the same set of facts of this case.

**IN VIEW OF THE FOREGOING,** we request the Pre Sentence Investigation Report be amended, pursuant to the objections presented, and for sentence to ensue accordingly.

**RESPECTFULLY SUBMITTED.**

    s/Marlene Aponte Cabrera
    MARLENE APONTE CABRERA, ESQ.
    USDCPR 208603
    MSC 128
    SIERRA MORENA 271, LAS CUMBRES
    SAN JUAN, PUERTO RICO 00926
    Tel. (787)547-5999
    firebug@prtc.net

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY**, that on this date, May 26, 2006, I have filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Jacabed Rodriguez.

    **s/Marlene Aponte Cabrera**
    MARLENE APONTE CABRERA, ESQ.
    USDCPR 208603
    MSC 128
    SIERRA MORENA 271
    LAS CUMBRES
    SAN JUAN, PUERTO RICO 00926
    Tel. (787)547-5999
    firebug@prtc.net